IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00230-WYD-KLM

CHARLES BUSH,
BRAD GRIMSLEY,
MARK L. HANSON, and
JOHN F. NOBLE, all individuals residing in Colorado,

        Plaintiffs,

v.

FEDEX FREIGHT, INC., an Arkansas corporation doing business in Colorado,

        Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Defendant's **Motion for Award of Fees and
Expenses Relating to Additional Discovery** [Docket No. 69; Filed March 17, 2013] (the
"Motion").  On April 11, 2013, Plaintiffs filed a Response to the Motion [#87].  On April 29,
2013, Defendant filed a Reply [#88].   Pursuant to 28 U.S.C. § 636(b)(1)(A) and
D.C.COLO.LCivR 72.1C., the Motion was referred to this Court for recommendation [#71].
The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the
applicable law, and is sufficiently advised in the premises.  For the reasons set forth below,
the Motion is **GRANTED**.

**I. Background**

        Plaintiffs' Complaint asserts claims for alleged age discrimination and retaliation
against  Defendant  FedEx  Freight,  Inc.  ("Defendant"),  arising  from  "the  suspension,

-1-

demotion, and/or discharge of [Plaintiffs], purportedly for accidents that occurred while they were driving [as employees of Defendant]." *Compl.* [#1] at 1.  Plaintiffs, all of whom were over forty years of age when employed by Defendant, allege that younger "drivers who were involved in similar or even more serious accidents . . . were not suspended from driving, and/or did not suffer the other adverse actions to which [Plaintiffs] were subjected." *Id.* at 1-2.

In their responses to interrogatories and document requests, Plaintiffs initially identified eleven drivers who Plaintiffs contend support their claims of age discrimination. *Motion* [#69] ¶ 3.  Plaintiffs indicated in their response to Interrogatory No. 9 that these eleven drivers were all under the age of 40, had allegedly been involved in rollover accidents, and had allegedly been treated more leniently than Plaintiffs in the resulting safety review process. *Id.*; *Def. Ex. 1, Bush Resp. To Interrogatories* [#69-1] at 4; *Def. Ex. 2, Additional Resps. To Interrogatories* [#69-2] at 4, 11, 18.  These responses repeatedly assert that "discovery in this case is ongoing and, thus far, incomplete[,]" in part because "Plaintiffs have not had the opportunity fully to review discovery responses and accompanying documents from [Defendant] yet." *Def. Ex. 1, Bush Resp. To Interrogatories* [#69-1] at 2, 5, 6; *Def. Ex. 2, Additional Resps. To Interrogatories* [#69-2] at 2, 5, 9, 12, 17, 19.

Defendant "conducted depositions, written discovery, and prepared expert reports in reliance upon Plaintiffs' [interrogatory] Responses." *Motion* [#69] ¶ 11.  "In addition, [Defendant] deposed five of the [eleven] individuals Plaintiffs identified in their discovery responses as potential witnesses that would support their claims." *Id.*  Defendant also retained Mr. John Hill, an expert in motor carrier safety, "to evaluate whether Plaintiffs were

treated consistently in the disqualification review process with how the [eleven witnesses] identified by Plaintiffs [in their interrogatory responses] were treated." *Id.* ¶ 12. Defendant "also conducted the deposition of Plaintiffs' accident reconstruction expert, Mr. Jerry Ogden, concerning his evaluation of how some of these drivers were treated." *Id.*

On February 22, 2013, the Court held a telephonic discovery hearing to address discovery issues raised by both parties. *Minute Entry* [#58]. Among other issues, the Court addressed Defendant's oral Motion to Strike witnesses and evidence endorsed or disclosed by Plaintiffs after the discovery cutoff in early January. *Id.* at 1; *Tr. of Telephonic Disc. Hearing ("Hearing Tr.")* [#77] at 31. Defendant argued that after the discovery cutoff, Plaintiffs disclosed for the first time "the names of nine additional drivers that Plaintiffs contend were either additional examples of drivers under the age of 40 who were allegedly treated more leniently or who[m] Plaintiffs contend had knowledge relating to Plaintiffs' claims." *Motion* [#69] ¶ 4. The Court found that Defendant had been prejudiced, but denied Defendant's Motion to Strike these witnesses, instead extending the discovery deadline to April 15th, 2013, and the dispositive motion deadline to May 15th, 2013, in order to permit Defendant to conduct discovery relating to this evidence. *Hearing Tr.* [#77] at 44-45; *see Minute Order* [#72] at 1 ("The Court's previous ruling to reopen discovery was for the limited purpose of allowing the Defendant to conduct discovery to address the prejudice which Defendant had suffered as a result of the late disclosure of evidence to be utilized by the Plaintiffs."). At the conclusion of the hearing, when Defendant's counsel asked if Defendant would be permitted to "submit a request for fees in connection with having to go back and conduct the additional discovery," the Court informed Defendant that it "may make any such motion in writing and [that P]laintiff [would] have an opportunity to

respond." *Id.* at 46.

Defendant seeks reasonable expenses, including attorneys' and experts' fees and costs, that it claims it will incur "as a result of conducting discovery, and obtaining a revised report from Defendant's expert, John Hill, relating to the late disclosures." *Motion* [#69] ¶ 6. Referring to the late disclosed witnesses and evidence collectively as the "New Evidence," Defendant alleges that its expenses will include:

> a. Fees and costs relating to reopening the depositions of Plaintiffs for the purpose of inquiring into issues relating to the New Evidence;
>
> b. Fees and costs relating to the depositions of at least some of the nine late disclosed witnesses and/or the two witnesses disclosed just one day before the discovery cutoff; and
>
> c. Fees and costs relating to supplementation of FXFI's expert disclosures to address information relating to the New Evidence, including any expert witness fees incurred in analyzing the New Evidence and supplementing Defendant's expert reports.

*Id.* Defendant does not address what these expenses will amount to, and instead assures the Court that if the Motion is granted, Defendant "will submit a supplemental statement and supporting documentation detailing the amount of fees incurred once the discovery has been completed." *Id.* ¶ 23; *see Reply* [#88] at 10.

Plaintiffs respond by arguing that the Motion is baseless and moot for several reasons. *Response* [#87] at 1. First, Plaintiffs allege that "[a] party is not entitled to attorney[s'] fees and costs related to a motion on which it does not prevail," and that the Court's denial of Defendant's oral Motion to Strike the late disclosed evidence forecloses the possibility of recovering attorneys' fees and costs related to the evidence. *Id.* at 1; *see id.* at 3. Second, Plaintiffs also argue that the requested expenses are exaggerated, unreasonable, and unnecessary. *Id.* at 2; *see id.* at 4-8. Third, Plaintiffs allege that "any

-4-

prejudice the Court found in Plaintiffs' late supplemental disclosures has already been corrected" by the extension of unilateral discovery and the dispositive motion deadline. *Id.* at 3; *see id.* at 8-9.  Fourth, Plaintiffs allege that the Motion has been brought in bad faith, either as "an attempt to intimidate Plaintiffs and drive up their costs, [or] an attempt to bolster the plainly deficient report prepared by [Defendant's] proffered safety expert [in response to] Plaintiffs['] ripe and pending *Daubert* Motion to exclude him." *Id.* at 3; *see id.* at 9-10.  In reply, Defendant argues that Plaintiffs' arguments are without merit for the purpose of the present Motion because they do not challenge the Court's authority to grant the relief sought.  *Reply* [#88] at 3.  Defendant asserts that "these arguments are red herrings intended to deflect attention from Plaintiffs' inability to deny the crucial facts entitling [Defendant] to the relief it requests." *Id.*

## II. Analysis

### A.      Fed. R. Civ. P. 26(a) and (e)

Fed. R. Civ. P. 26(a)(1)(A) requires, with some exceptions inapplicable here, that "a party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  These disclosures must be made "at or within 14 days after the parties' Rule 26(f) conference."  Fed. R. Civ .P. 26(a)(1)(C).  Litigants' disclosure obligations do not cease after initial compliance with the Rule, however.  "A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ."  Fed. R. Civ.

P. 26(e).

The Court need only briefly address Plaintiffs' argument that the Court's denial of Defendant's oral Motion to Strike bars Defendant from receiving the relief it requests. *Response* [#87] at 3.  While the wholesale exclusion of Plaintiffs' late disclosures would have been an inappropriate remedy, there is no doubt that the late disclosures violated Rule 26.  *See Adams v. Cline Agency, Inc.*, No. 10-cv-02758-WJM-KLM, 2013 WL 2444696, at *4 (D. Colo. Jun. 5, 2013).  "The failure to disclose witnesses prior to the close of discovery, which effectively forecloses the opposing party from conducting discovery on the supplemental disclosures, constitutes a violation of Rule 26," and the Court's selection of a remedy less severe than complete exclusion of the evidence does not alter the fact that a violation did occur.  *Four Corners Nephrology Assoc., P.C. v. Mercy*, No. 05-CV-02084, 2007 WL 1613352 at *1 (D. Colo. June 1, 2007) (citing *Owner-Operator Indep. Driver Assoc., Inc. v. USIS Commercial Servs., Inc.*, No. 04RB1384, 2006 WL 2331003, at *1 (D. Colo. 2006)); *cf. Brockmann v. Bd. of Cnty. Comm'rs*, 404 F. App'x 271, 288 (10th Cir. 2010) ("The fact that [the p]laintiffs had already provided the information in another form does not relieve [the p]laintiffs of their obligation to comply with Rule 36(a)(4); instead, this fact goes to the amount of reasonable expenses the requesting party could demand.").  Rule 37(c) "vests the court with discretion to impose 'other appropriate sanctions' in addition to or in lieu of an order striking witnesses or evidence not properly disclosed," and the fact that the Court has chosen not to strike the newly identified witnesses does not foreclose the possibility of 'other appropriate sanctions.'  *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004).  Plaintiffs cite no authority, binding or persuasive, to the contrary.  *See Response* [#87] at 3.  Thus, the Court proceeds to

consider whether Rule 37(c) sanctions are appropriate in this case.

**B.     Fed. R. Civ. P. 37(c)**

Pursuant to Fed. R. Civ. P. 37(c)(1), violation of Fed. R. Civ. P. 26(a) or 26(e) may provide additional grounds for sanctions, at the discretion of the Court.  Such sanctions may include "payment of the reasonable expenses, including attorney's fees, caused by the failure" to identify a witness as required by Rule 26(a) or (e).  Fed. R. Civ. P. 37(c)(1)(A).  In considering what sanctions to impose, the Court must bear in mind the rationale and purposes to be served by sanctions, including: (1) deterring future litigation abuse; (2) punishing present litigation abuse; (3) compensating victims of litigation abuse; and (4) streamlining court dockets and facilitating case management.  *See Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)); *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990).[1]  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).  "Where preclusion of the undisclosed evidence is not a proper sanction, the appropriate alternative sanction should be in keeping with the significance of the violation."  *Trattler v. Citron*, 182 P.3d 674, 683 (Colo. 2008).

"The sanctions available under Rule 37(c) are often described as 'self executing' and 'automatic.'"  *Adams*, 2013 WL 2444696, at *2 (citing Steven S. Gensler, Federal Rules of

---

[1]  Although *White* involved sanctions under Rule 11, its principles and policy interests apply equally to sanctions under Rules 26 and 37.

Civil Procedure, Rules and Commentary Rule 37 (2012)). However, in addressing Rule 37 generally, the Tenth Circuit has made clear that "[t]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion." *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971); *see also Woodworker's Supply*, 170 F.3d at 993 (recognizing that Rule 37(c) vests broad discretion with the trial court); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations). Therefore, although Rule 37(c) refers to Rule 37(b)(2)(A)(I)-(v), which provides a list of potential options for a court's consideration in fashioning an appropriate sanction, the determination of an appropriate sanction is left to the sound discretion of the court, limited only by the requirements that the sanction be "just," and "related to the particular claim" at issue. *See Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992)

To avoid sanctions, the non-moving party has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless. *See Hirpa*, 50 F. App'x at 932 ("Our analysis will focus exclusively on whether the district court abused its discretion in determining that the Hospital met its burden of demonstrating, under Rule 37(c)(1), that the failure to disclose the existence of the autopsy slides was substantially justified and harmless."); *Sender*, 225 F.R.D. at 655 (citation omitted). In construing Rule 37(c)(1), the Tenth Circuit has held that:

> [a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."

*Woodworker's Supply*, 170 F.3d at 993 (citations omitted).  Even read liberally, Plaintiffs' Response makes no attempt to show that they were "substantially justified" in delaying their witness disclosures,[2] and instead reads as an argument against the reasonableness of the requested expenses, despite the fact that Defendant's Motion does not yet seek a determination of the amount or reasonableness of their prospective discovery costs.  *See Motion* [#69] ¶ 23; *Reply* [#88] at 10.  However, Plaintiffs' arguments do address some of the factors that guide the Court's determination of harm,[3] and these the Court will consider.

## 1.    Ability to Cure

Plaintiffs allege that "any prejudice the Court found in Plaintiffs' late supplemental

---

[2]  To the extent that Plaintiffs argued at the February 22, 2013 Discovery Hearing that the late disclosures were justified because the newly identified witnesses' names were pulled from Defendant's own documents, the Court finds this argument unpersuasive. *Hearing Tr.* [#77] at 41-43.  "[T]his assertion would require the Court to attribute an uncanny level of prescience to Defendant." *Jama v. City & Cnty. of Denver*, 280 F.R.D. 581, 584 (D. Colo. 2012).  Knowledge of the existence of a person is distinctly different from knowledge that the person will be relied on as a fact witness.  *See Gallegos v. Swift & Co.*, No. 04-cv-01295-LTB-CBS, 2007 WL 214416, at *3 (D. Colo. Jan. 25, 2007) (rejecting the plaintiff's argument that the defendant was on notice of certain witnesses identified in an untimely disclosure because the names of the witnesses were obtained from the defendant's own document production).  Therefore, this argument does not suggest that the delay in disclosure was "substantially justified."

[3]  Although Plaintiffs' arguments that the requested expenses are exaggerated, unreasonable, and unnecessary could have been framed as an argument denying that any prejudice occurred from Plaintiffs' delayed disclosures, these arguments are clearly framed instead as objections to the reasonableness of Defendant's requested expenses. *Response* [#87] at 2, 4-8.  As the question of the expenses' reasonableness is not yet before the Court, these objections are more appropriately addressed at a later date.

disclosures has already been corrected" by the extension of unilateral discovery and the dispositive motion deadline. *Response* [#87] at 3; *see id.* at 8-9. At the February 22, 2013 Hearing, the Court found that Defendant was prejudiced by the delayed disclosure.[4] The Court stated: "In order to overcome the prejudice, I will extend the discovery deadline for the sole purpose of conducting either written or oral discovery with respect to these late disclosed witnesses." *Hearing Tr.* [#77] at 44-45. It is true that reopening discovery for the limited purpose of allowing Defendants to prepare their case with respect to Plaintiffs' newly disclosed witnesses may alleviate some prejudice. *See Adams*, 2013 WL 2444696, at *4. However, even if, as Plaintiffs argue, the extended discovery deadline allowed Defendant to properly react to the disclosures and to collect the evidence necessary for its defense, Defendant would be further prejudiced to the extent the delayed disclosures disrupted the case management schedule and required previously unnecessary expenditures. *Cf. Saudi v. Northrup Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (suggesting that a party's failure to provide proper expert disclosures "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."); *Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1062

---

[4] The Court notes a single instance in the transcript of the February 22, 2013 Hearing that suggests otherwise: "I don't find that the defendant has been prejudiced." *Hearing Tr.* [#77] at 44:17-18. However, this single sentence is inconsistent with the rest of the transcript, which uniformly suggests a finding of prejudice. The Court's review of the audio recording revealed that this sentence was mistranscribed by the court reporter, and should read "I do find that the defendant has been prejudiced." "Judges, witnesses-even counsel-occasionally misspeak, and court reporters occasionally misapprehend, on the record. Where an omitted "but" or "not" changes the meaning of a sentence in a manner inconsistent with the context in which it is made, reviewing courts are capable of reading the sentence in its overall context." *Cook v. Rockwell Intern. Corp.*, 428 F. Supp. 2d 1152, 1160-61 (D. Colo. 2006). As neither party directly contests this reading of the transcript, the Court accepts that the parties have understood the Court to have found prejudice to Defendant, and that the remaining argument is over the extent to which said prejudice has been remedied.

(9th Cir. 2004) (holding that disruption to the case management schedule caused by late disclosures is not harmless).  The reopening of discovery and extension of the dispositive motion deadline imposes additional expenses and delay on Defendant that are solely due to Plaintiffs' late disclosures.  Any financial prejudice to Defendant may be substantially cured only by requiring Plaintiffs to pay the costs related to the untimely disclosure, should Defendant later show such costs to be reasonable.  *See, e.g.*, *Seubert v. FFE Transp. Servs., Inc.*, No. 4:11CV01651AGF, 2013 WL 1755371, at *3 (E.D. Mo. Apr. 23, 2013).  Therefore, this argument does not weigh in favor of a finding that Plaintiffs' late disclosures were harmless.

### 2.    Bad Faith

Plaintiffs allege that the Motion has been brought in bad faith, either as "an attempt to intimidate Plaintiffs and drive up their costs, [or] an attempt to bolster the plainly deficient report prepared by [Defendant's] proffered safety expert [in response to] Plaintiffs['] ripe and pending *Daubert* Motion to exclude him."  *Response* [#87] at 3; *see id.* at 9-10. Plaintiffs assert that Defendant "is well aware from the discovery conducted that each Plaintiff is either unemployed or employed in a manner that would devastate him should he be burdened with even a thousand dollars of costs, let alone the large sum [Defendant] will claim against the Plaintiffs."  *Id.* at 9.  Defendant replies by arguing that Plaintiffs are responsible for the late disclosures, and are thus responsible for the increased costs. *Reply* [#88] at 7.  Defendant also reiterates that the Court found that the late disclosures were prejudicial to Defendant and that additional discovery was necessary.  *Id.*; *see Hearing Tr.* [#77] at 44.

Defendant does not address Plaintiffs' allegation that the Motion is intended to

bolster Defendant's safety expert's report.  The Court, *sua sponte*, determined at the February 22, 2013 hearing that the discovery deadline should be extended, and thus Defendant cannot reasonably be accused of seeking to bolster a witness's report in preparation for a *Daubert* motion.  *Hearing Tr.* [#77] at 44.  Additionally, the Court sees no reason why Defendant should be unable to use evidence properly discovered in response to late disclosures for any purpose related to those disclosures, including purposes related to the admissibility of expert statements.  Such discoveries may impact important factors of a *Daubert* analysis, such as the quantitative assessment of the facts and data upon which the expert relied.  *See United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005); Fed. R. Evid. 702, advisory committee notes.

There is no basis for Plaintiffs' claim that Defendant has conducted discovery or filed this Motion for any reason other than to remedy the prejudice caused by Plaintiffs' delayed disclosures.  Plaintiffs essentially allege a violation of Fed. R. Civ. P. 11 by alleging that the Motion "is . . . being presented for an[ ] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1). Rule 11 imposes a standard of objective reasonableness, which asks the trial court to determine "whether a reasonable and competent attorney would believe in the merit of an argument."  *See Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991); *see also Bridge Publ'ns, Inc. v. F.A.C.T.Net, Inc.*, 183 F.R.D. 254, 263 (D. Colo. 1998) (denying motion for sanctions after determining that defendant's affirmative defenses were not unreasonable under the circumstances).

The Tenth Circuit has noted "that attorneys, as a whole, usually represent their clients in a professional, competent, and reasonable manner."  *Bullock v. Carver*, 297 F.3d

1036, 1046 (10th Cir. 2002) (citing *Bell v. Cone*, 535 U.S. 685 (2002) (Stevens, J., dissenting) ("[A] presumption that every lawyer in every capital case has performed ethically, diligently, and competently is appropriate because such performance characterizes the members of an honorable profession."). The Tenth Circuit has further explained that "[s]trategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (citations and quotation omitted); see also *Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (explaining the difficulty in challenging an attorney's strategic choices). Given the Court's finding of prejudice to the Defendant, *Hearing Tr.* [#77] 44-46, the Court finds that it is objectively reasonable for Defendant to seek reasonable fees and expenses in connection with its additional discovery. *See Bullock*, 297 F.3d at 1046 ("[W]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes "virtually unchallengeable."") (internal citation omitted).

### III.  Conclusion

IT IS HEREBY **ORDERED** that the Motion [#69] is **GRANTED**, and that Defendant is entitled to an award of reasonable fees and costs incurred conducting the limited discovery permitted by the Court's holding in the February 22, 2013 Telephonic Discovery Hearing. *Minute Order* [#58]; *Hearing Tr.* [#77] at 44-46; *see Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 07-cv-01379-WYD-CBS, 2009 WL 1328483, at *12 (D. Colo. May 12, 2009); *FatPipe Networks India, Ltd. v. Xroads Networks, Inc.*, No. 2:09-CV-186 TC DN, 2012 WL 192792, at *6-7 (D. Utah Jan. 23, 2012).

IT IS FURTHER **ORDERED** that Defendant shall file an affidavit in support of the award of fees and costs in accordance with D.C.COLO.LCivR 54.3B. on or before **September 23, 2013**.  Plaintiffs may respond on or before **October 4, 2013**.  No reply will be permitted.


Dated:  August 22, 2013


BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge